UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | § § |
| v. | § CRIMINAL NO. H-19-CR-832-2 |
| STEVEN O. BRYANT | § § § |

### PLEA AGREEMENT

The United States of America, by and through Jennifer B. Lowery, Acting United States Attorney for the Southern District of Texas, and Arthur R. Jones and Alamdar S. Hamdani, Assistant United States Attorneys, and Pamela S. Karlan, Principal Deputy Assistant Attorney General of the Civil Rights Division, and AeJean Cha, Trial Attorney, and the defendant, STEVEN O. BRYANT, and the defendant's counsel, pursuant to Rules **11(c)(1)(A) and 11(c)(1)(B)** of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### The Defendant's Agreement

1. The defendant agrees to plead guilty to Count Eight of the Indictment. Count Eight charges the defendant with **Destruction, Alteration, or Falsification of Records in Federal Investigations and Bankruptcy**, in violation of Title 18, United States Code, Section 1519. The defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment or sentence either charged in the indictment or information, or proved to a jury or proven beyond a reasonable doubt.

### Punishment Range

2. The **statutory** maximum penalty for each violation of Title 18, United States Code,

1

Section 1519, is imprisonment for 20 years and a fine of not more than two-hundred fifty thousand dollars ($250,000). Additionally, the defendant may receive a term of supervised release after imprisonment of at least 3 years. Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then defendant may be imprisoned for up to two (2) years, without credit for time already served on the term of supervised release prior to such violation. Title 18, U.S.C. §§3559(a)(3) and 3583(c)(3). Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

## Mandatory Special Assessment

3. Pursuant to Title 18, U.S.C. § 3013(a)(2)(A), immediately after sentencing, defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's's check or money order payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

## Potential Immigration Consequences

4. The defendant understands if he is not a citizen of the United States, the defendant's plea of guilty to Count Eight will result in a criminal conviction that could lead to the defendant's subsequent deportation, removal and/or exclusion from the United States. This conviction could also lead to the defendant being permanently barred from legally entering the United States after being deported or removed. In addition, the defendant's attorney has advised the defendant of the potential immigration consequences that could come about as a result of the defendant's plea of guilty to Count Eight. After understanding the potential immigration consequences of pleading

2

guilty to Count Eight, the defendant still wishes to plead guilty as detailed in this plea agreement.

## Cooperation

5. The parties understand this agreement carries the potential for a motion for departure under Section 5K1.1 of the Sentencing Guidelines. The defendant understands and agrees that whether such a motion is filed will be determined solely by the United States through the United States Attorney for the Southern District of Texas. Should the defendant's cooperation, if any, in the sole judgment and discretion of the United States, amount to "substantial assistance," the United States reserves the sole right to file a motion for departure pursuant to Section 5K1.1 of the Sentencing Guidelines Manual. This plea agreement does not require the defendant to cooperate, but should the defendant wish to do so the defendant agrees to persist in his/her guilty plea through sentencing, fully cooperate with the United States, and not oppose the forfeiture of assets as contemplated below in this agreement. The defendant understands and agrees that the United States may request that sentencing be deferred until any cooperation the defendant may provide is complete.

6. The defendant understands and agrees that "fully cooperate" as used herein, includes providing all information relating to any criminal activity known to defendant, including, but not limited to, any other individuals involved in civil rights violations and the destruction, alteration, or falsification of records in federal investigations. The defendant understands that such information includes both state and federal offenses arising therefrom. In that regard:

    (a)    Defendant agrees to testify truthfully as a witness before a grand jury or in any other judicial or administrative proceeding when called upon to do so by the United States. Defendant further agrees to waive his/her Fifth Amendment privilege against self-incrimination for the purpose of this agreement;

    (b)    Defendant agrees to voluntarily attend any interviews and conferences as the United

3

States may request;

(c) Defendant agrees to provide truthful, complete and accurate information and testimony and understands any false statements made by the defendant to the Grand Jury or at any court proceeding (criminal or civil), or to a government agent or attorney can and will be prosecuted under the appropriate perjury, false statement or obstruction statutes;

(d) Defendant agrees to provide to the United States all documents in his/her possession or under his/her control relating to all areas of inquiry and investigation.

(e) Should the recommended departure, if any, not meet the defendant's expectations, the defendant understands he/she remains bound by the terms of this agreement and cannot, for that reason alone, withdraw his/her plea.

## Waiver of Appeal

7. Defendant is aware that Title 28, United States Code, section 1291, and Title 18, United States Code, section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, section 2255. In the event defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

8. In agreeing to these waivers, defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing

range under the sentencing guidelines that he/she may have received from his/her counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce his/her guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence defendant within the calculated guideline range.

9. Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

## The United States' Agreements

10. If the Court determines that defendant qualifies for an adjustment under section 3E1.1(a) of the United States Sentencing Guidelines, and the offense level prior to operation of section 3E1.1(a) is 16 or greater, the United States will move under section 3E1.1(b) for an additional one-level reduction because defendant timely notified authorities of his or her intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently.

## United States' Non-Waiver of Appeal

11. The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

    (a) to bring its version of the facts of this case, including its evidence file and any

5

investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b) to set forth or dispute sentencing factors or facts material to sentencing;

(c) to seek resolution of such factors or facts in conference with defendant's counsel and the Probation Office;

(d) to file a pleading relating to these issues, in accordance with U.S.S.G. Section 6A1.2 and Title 18, U.S.C. § 3553(a); and,

(e) to appeal the sentence imposed or the manner in which it was determined.

## Sentence Determination

12. Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, U.S.C. §3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

## Rights at Trial

13. Defendant represents to the Court that he/she is satisfied that his/her attorney has rendered effective assistance. Defendant understands that by entering into this agreement, he/she

surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

    (a)    If defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if the defendant, the United States, and the court all agree.

    (b)    At a trial, the United States would be required to present witnesses and other evidence against the defendant. Defendant would have the opportunity to confront those witnesses and his/her attorney would be allowed to cross-examine them. In turn, the defendant could, but would not be required to, present witnesses and other evidence on his/her own behalf. If the witnesses for defendant would not appear voluntarily, he/she could require their attendance through the subpoena power of the court.

    (c)    At a trial, the defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if the defendant desired to do so, he/she could testify on his/her own behalf.

## Factual Basis for Guilty Plea

14. Defendant is pleading guilty because he is guilty of the charges contained in Count Eight of the Indictment. If this case were to proceed to trial, the United States could prove each element of this offense beyond a reasonable doubt. The following facts, among others, would be offered to establish the defendant' guilt:

    a. On January 28, 2019, officers from the Houston Police Department (HPD) executed a no-knock search warrant at a residence located at 7815 Harding Street in Houston, Texas. Defendants Steven O. Bryant and Gerald M. Goines were then each HPD officers and each participated in the execution of that search warrant. The execution of the search warrant led to an exchange of gunfire between one of the residents of 7815 Harding Street and HPD officers, which resulted in the death of the two residents of 7815 Harding Street and injury to four HPD officers, including Goines, who suffered a gunshot wound.

    b. It is Defendant's understanding that subsequent state and federal investigations revealed that then-HPD Officer Goines had obtained the search warrant for the residence at 7815 Harding Street earlier on January 28, 2019, based on information

Goines knew to be false, and that there was no probable cause for HPD officers to search the residence at 7815 Harding Street. Among other false statements he made in his affidavit to obtain this search warrant, Goines falsely stated that on January 27, 2019, a confidential informant (CI) had purchased heroin from a resident at the 7815 Harding Street home and given that heroin to Goines. Goines also falsely stated in this affidavit that he and Defendant Bryant recognized the substance purchased as heroin.

c. It is Defendant's understanding that the investigations also revealed that the subsequent execution of this illegally- obtained search warrant was in violation of the civil rights that the residents of the home at 7815 Harding Street were guaranteed under the 4th Amendment to the United States Constitution, which provides the right of the people of the United States to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, and also provides that there must be probable cause before any search warrants may be issued.

d. Two days after HPD officers executed the search warrant at 7815 Harding Street, on January 30, 2019, Defendant Bryant prepared and completed an official Houston Police Department Supplemental Police report and uploaded it to the Houston Police Department's computer system. In this supplemental report Defendant Bryant falsely claimed that he "had previously assisted Officer Gerald Goines in the investigation on 1/27/19," and falsely identified the "brown powdery substance (Heroin)" he retrieved from Officer Goines's vehicle "as the narcotics purchased from 7815 Harding Street on 1/27/19." In truth and in fact, the defendant did not assist Goines with any alleged investigation into 7815 Harding Street on January 27, 2019, or on any other date, and could not identify the "brown powdery substance" he retrieved from Goines' car "as the narcotics purchased from 7815 Harding Street on 1/27/2019."

e. The illegal possession and trafficking of controlled substances is regulated by federal criminal statutes, and accordingly is a matter within the jurisdiction of the FBI, a federal agency. As a matter within the jurisdiction of a federal agency, it is also reasonably foreseeable that any such alleged criminal acts would be investigated by federal authorities. Any willful violations of a person's civil rights guaranteed or provided by the United States Constitution, including a person's Fourth Amendment right to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, is regulated by federal criminal statutes, and accordingly is a matter within the jurisdiction of the FBI, a federal agency. As a matter within the jurisdiction of a federal agency, it is also reasonably foreseeable that any such alleged criminal Fourth Amendment violations would be investigated by federal authorities. When Defendant Bryant prepared and completed the above official Houston Police Department Supplemental Police report and uploaded it to the Houston Police Department's computer system on

January 30, 2019, he was aware of the foregoing facts based on his training and experience, though the FBI had never before investigated any narcotics-related shootings in which Defendant had been involved. Defendant submitted the report with the intent to impede, obstruct and influence any investigation into the execution of the search warrant for 7815 Harding Street and the circumstances behind how the warrant was obtained, to include the actions of Gerald M. Goines in obtaining that warrant, which Defendant believed at the time involved an actual narcotics transaction completed in violation of the Houston Police Department's policy.

f. Defendant Bryant first learned about the possible execution of a search warrant at the residence located at 7815 Harding Street from co-defendant Gerald M. Goines on the night of Sunday, January 27, 2019. Goines called the defendant and explained that he was going to do a buy, without mentioning the location of the "buy." Defendant offered to meet Goines at the "buy" location, but Goines declined. In the past, Goines and the defendant had falsely listed each other as the second officer present when each had used confidential informants ("CI") to make drug buys when, in truth and in fact, the other officer was not present. This was in violation of HPD policies. The defendant has never done a CI buy with Goines.

g. On January 27, 2019, when Goines called the defendant to let him know he was going to do a "buy," the defendant understood at that time that Goines was probably going to falsely identify the defendant as the second officer who witnessed an actual CI buy; this false report about the second officer was consistent with their practice.

h. On the morning of the Harding Street raid, January 28, 2019, Defendant Bryant and some other officers began working around 8:00 a.m. on a "buy-bust," where an undercover officer would purchase drugs. The Defendant falsely stated in overtime paperwork he submitted to HPD that he began working that day at 6:00 a.m., when the earliest he actually began working that day was 8:00 a.m.

i. At approximately noon on January 28, 2019, Goines gave Defendant Bryant the address for the search warrant he wanted to execute, 7815 Harding Street. That was the first time the Defendant learned of the address where the search warrant was to be executed. At that time, the defendant drove by 7815 Harding Street for the first time to surveille the location.

j. Later that afternoon, Goines gave a briefing to a group of HPD officers who were to execute the search warrant at 7815 Harding Street. Among other things, Goines told them the location and route to the residence, and that the occupants were a white male, who was armed, and a white female. Another HPD officer stated that there was a dog at the residence. Goines also briefed the officers that heroin was previously purchased at the residence. Defendant Bryant had no personal knowledge at that point whether Goines or any CI had previously purchased drugs

9

from 7815 Harding Street though he believed what Goines said at the briefing.

k. After this briefing, Bryant and other officers proceeded to 7815 Harding Street to execute the search warrant. Defendant Bryant's role in the execution of the warrant was to be the officer who breached the door to the residence. Once officers got to 7815 Harding Street, they took up their assigned positions and then began to execute the search warrant. As Defendant Bryant breached the door to the residence, the entry team entered the house. Bryant remained outside the residence as they went in. Within seconds of the entry, Defendant Bryant heard gunshots, which he assumed was the dog being shot with the shotgun. Defendant remained outside the residence during the gunfire. Defendant administered first aid to Goines after Goines was shot and remained with him until paramedics arrived.

l. Hours after the shooting, and while still at the Harding Street location, the defendant for the first time obtained and read a copy of the search warrant for the residence, including the affidavit Goines prepared and signed to obtain it. As Defendant Bryant read the affidavit he saw that Goines had falsely stated the Defendant had witnessed a purported purchase of heroin by a confidential informant from someone at 7815 Harding Street on January 27, 2019. Defendant Bryant had not witnessed anyone purchase any drugs from anyone at 7815 Harding Street on that day or at any other time. The first time Defendant Bryant had ever been to the 7815 Harding Street residence was on the afternoon of January 28, 2019, when he surveilled that residence in anticipation of executing the search warrant there later that day.

m. Defendant Bryant knew there would likely be an investigation into the execution of the search warrant at 7815 Harding Street, including the CI buy that he had allegedly witnessed. Defendant Bryant called then-HPD Officer A from the scene of the shootout and asked him to look up the police report for the purported January 27, 2019, drug purchase from 7815 Harding Street on HPD's computer system. The defendant wanted to learn the details of the January 27, 2019 drug purchase and what Goines had reported regarding the defendant's involvement with that drug purchase. Officer A did so and told Bryant that the police report was completed, and that it stated a heroin buy from there occurred at 5:00 p.m. on January 27, 2019, and that the drugs had been "tagged."

n. On the morning of January 30, 2019, HPD Sergeant B contacted Defendant Bryant and told him that the HPD lab could not locate the heroin from the purported January 27, 2019, drug buy from 7815 Harding Street. The defendant then called Officer C, because he knew Officer C was at the hospital with Goines who had been admitted after he was shot. Officer C told the defendant, after communicating with Goines, the drugs were still in Goines' HPD vehicle. Defendant Bryant then called Sergeant B and told him the drugs were in Goines' car (and not "tagged" as evidence), and asked Sergeant B what to do about it. Sergeant B asked Defendant

Bryant if he wanted to help Goines, and Defendant Bryant told Sergeant B he did. Defendant Bryant believed he could help Goines by covering up for Goines' late submission of the purported drugs bought from 7815 Harding Street into evidence. Defendant Bryant still erroneously believed at that time that Goines and the CI had bought the drugs there as Goines had claimed. Defendant Bryant then went to Goines' unmarked HPD vehicle parked at an HPD substation located at 8300 Mykawa Street in Houston, and found what he thought were the drugs previously purchased from 7815 Harding Street in the center console, in the place Officer C directed him to look. Defendant Bryant then called Sergeant B who told him to tag the drugs. Defendant Bryant weighed the drugs, completed the paperwork, and drove to HPD headquarters at 1200 Travis Street in Houston where he submitted the drugs into evidence.

o. Around 1:00 p.m. on January 30, 2019, Defendant Bryant was at the hospital housing Goines, when Sergeant B asked Defendant Bryant which confidential informant made the supposed drug buy at Harding Street. Defendant Bryant said he did not know, and so the two of them went into Goines' room and asked him. Goines could not speak because of his injury but he wrote down a name (hereafter referred to as CI #1) on a piece of paper and handed it to them.

p. Later that afternoon, Defendant Bryant completed and submitted into HPD's computer system a supplemental report regarding the investigation into the 7815 Harding Street residence. In this report, Defendant Bryant falsely claimed that he "had previously assisted Officer Gerald Goines in the investigation on 1/27/19," and falsely identified the "brown powdery substance (Heroin)" he retrieved from Goines' HPD vehicle "as the narcotics purchased from 7815 Harding Street on 1/27/19." In truth and in fact, the defendant did not assist Goines with any alleged investigation into 7815 Harding Street and could not identify the "brown powdery substance" he retrieved from Goines car "as the narcotics purchased from 7815 Harding Street on 1/27/2019."

q. On the evening of January 30, 2019, the defendant contacted CI #1 by telephone in the presence of Sergeant B. CI #1 denied making any purchase of drugs for or with Goines on January 27, 2019, to include any purchases from 7815 Harding Street. Sergeant B listened to the conversation between Defendant and CI #1. After CI #1 denied making any purchase of drugs at the location, Defendant looked at Sergeant B who signaled Defendant to end the call.

r. The defendant learned that an official order from command staff had been given to Officer D to find CI #1. The defendant contacted Officer D and asked her to not find CI #1 by, for example, knocking on the wrong door. The defendant later learned that Officer D had found CI #1 as ordered.

s. Defendant was summoned that same evening to HPD headquarters to meet with

11

Commander E. Defendant met with Commander E in his office. Commander E had a copy of the warrant which had been obtained by Goines and told Defendant he was going to need a lawyer. Defendant told Commander E that he had not signed the affidavit that was used to obtain the warrant and that he was not at the Harding Street location when the purported narcotics buy took place. Defendant gave Commander E the keys to Goins' patrol car and left shortly thereafter

t.   Later that night, Defendant Bryant met with Goines in his hospital room, and by this time understood that the CI previously identified by Goines appeared not to have made any drug purchases at 7815 Harding Street on January 27, 2019. At this meeting Defendant Bryant told Goines that CI #1 denied making any drug purchases at 7815 Harding Street on January 27, 2019. The defendant and Goines scrolled through one of Goines' phones, so that Defendant could locate the CI Goines purportedly used. While pointing at one of the contacts in Goines' phones, the defendant asked, "Is this the CI?" Goines pointed at Defendant in response to the question. Defendant then asked, "Do you want me to make this person [CI #2] the CI?" Goines nodded in agreement. Goines then gave the defendant CI #2's name and number. The defendant knew that CI #2 had not purchased any drugs at 7815 Harding Street. The defendant understood that he was supposed to contact CI #2 and give her the fabricated details of the drug buy so that she could lie to law enforcement when later interviewed.

u.   The defendant met in person with Officer A and told him that Goines wanted them to make CI #2 the confidential informant who had allegedly purchased drugs at 7815 Harding Street. The defendant told Officer A he was not going to do as Goines had asked. The defendant gave Officer A the piece of paper with CI #2's name and contact information. Officer A took the piece of paper but did not indicate whether he would contact CI #2 and give her the fabricated details of the drug buy at 7815 Harding Street.

v.   On or about January 31, 2019, the defendant and Officer C spoke in person about Goines' request to fabricate a CI to justify the warrant. Officer C told the defendant that Goines had also asked Officer C to make someone the CI for the alleged buy at 7815 Harding Street. Officer C told the defendant that he was not going to provide someone with false information regarding the alleged buy so that that person they could later lie to investigators.

w.   It is Defendant's understanding that on the morning of January 31, 2019, Goines also stated to HPD Lieutenant F that CI #2 made the purported drug purchase at 7815 Harding Street and gave her the name of CI #2.

x.   On or about January 30, 2019, Defendant Bryant, while acting in relation to and in contemplation of a matter within the jurisdiction of an agency of the United States, knowingly made a false entry in a record, document and tangible object

12

related to the probable cause to search 7815 Harding Street, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within federal jurisdiction. Defendant Bryant admits this conduct obstructed justice in violation of Title 18, United States Code, Section 1519.

## Breach of Plea Agreement

15. If defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and the defendant's plea and sentence will stand. If at any time defendant retains, conceals, or disposes of assets in violation of this plea agreement, or if defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

## Restitution, Forfeiture, and Fines – Generally

16. This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that he/she will make a full and complete disclosure of all assets over which he/she exercises direct or indirect control, or in which he/she has any financial interest. Defendant agrees not to dispose of any assets or take any action that would effect a transfer of property in which he/she has an interest, unless Defendant obtains the prior written permission of the United States.

17. Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) within 14 days of signing this plea agreement. Defendant agrees to authorize the release of all financial information requested by

13

the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security information. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

18. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents necessary to effectuate such transfer. Defendant also agrees to direct any banks which have custody of his/her assets to deliver all funds and records of such assets to the United States.

19. Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations.

20. Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any. Defendant agrees that any fine imposed by the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment. Subject to the provisions above, Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

21. This plea agreement is being entered into by the United States on the basis of defendant's express representation that he/she will make a full and complete disclosure of all assets over which he/she exercises direct or indirect control, or in which he/she has any financial interest.

22. Defendant consents to any agreed order of forfeiture or judgment, and further agrees to take all steps necessary to pass clear title to forfeitable assets to the United States, including, but

14

not limited to, surrendering of title, signing a consent decree, stipulating facts regarding the transfer of title and basis for the forfeiture, and signing any other documents necessary to effectuate such transfer. Defendant also agrees to direct any banks which have custody of defendant's assets to deliver all funds and records of such assets to the United States.

## Complete Agreement

23. This written plea agreement, consisting of 17 pages, including the attached addendum of defendant and his/her attorney, constitutes the complete plea agreement between the United States, defendant and his/her counsel. No promises or representations have been made by the United States except as set forth in writing in this plea agreement. Defendant acknowledges that no threats have been made against him/her and that he/she is pleading guilty freely and voluntarily because he/she is guilty.

24. Any modification of this plea agreement must be in writing and signed by all parties.

Filed at Houston, Texas, on _____June 1_____, 2021.

_____
STEVEN O. BRYANT
Defendant

Subscribed and sworn to before me on _____June 1_____, 2021.

DAVID J. BRADLEY
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

APPROVED:

JENNIFER B. LOWERY
ACTING UNITED STATES ATTORNEY

PAMELA S. KARLAN
PRINCIPAL DEPUTY ASSISTANT
ATTORNEY GENERAL
CIVIL RIGHTS DIVISION

___/s/Arthur R. Jones___
Arthur R. Jones
Assistant United States Attorney
Southern District of Texas

___/s/ AeJean Cha___
AeJean Cha
Trial Attorney
Civil Rights Division

___/s/ Alamdar S. Hamdani___
Alamdar S. Hamdani
Assistant United States Attorney
Southern District of Texas

_____
ANDY DRUMHELLER
Attorney for Defendant

_____
DEREK S. HOLLINGSWORTH
Attorney for Defendant

16

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | CRIMINAL NO. H-19-CR-832-2 |
| STEVEN O. BRYANT | § § | |

## PLEA AGREEMENT - ADDENDUM

I have fully explained to defendant his/her rights with respect to the pending Indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____     5/24/2021
ANDY DRUMHELLER                     Date
Defense Counsel

_____     5/24/2021
DEREK S. HOLLINGSWORTH              Date
Defense Counsel

17

I have consulted with my attorney and fully understand all my rights with respect to the indictment pending against me. My attorney has fully explained and I understand all my rights with respect to the provisions of the United States Sentencing Commission's <u>Guidelines Manual</u> which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

_____  
STEVEN O. BRYANT  
Defendant

05-24-21  
Date